IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**JAMES V. STREETMAN #1244064**

-vs-                                                                                               Case No.  A-13-CA-404-LY

**NATHANIEL CORIELL, PHILIP KELLY, and
STEVE DOMINGUEZ**

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:     THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

The undersigned magistrate judge submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's complaint brought pursuant to 42 U.S.C. § 1983 (Document No. 1); Plaintiff's Rule 7 Reply (Document No. 22); Defendants' original Motion for Summary Judgment (Document No. 28); Defendants' additional exhibits (Document Nos. 30-32); Defendants' First Amended Motion for Summary Judgment (Document No. 36); Plaintiff's "Opposed Motion for Summary Judgment,"[1] Motion to Relate,[2] and Motion for Appointment of Counsel and Motion

---

[1] Plaintiff does not actually move for summary judgment. Rather, he explains genuine issues of material fact exist as to the level of resistance, if any, to arrest. Plaintiff points out these facts can only be decided in a trial. As Plaintiff does not actually move for summary judgment, his motion should be dismissed.

[2] Plaintiff requests the Court to relate his case to other excessive force cases brought against Defendant Coriell. As Plaintiff has not identified any excessive force cases brought against Defendant Coriell, his motion should be denied.

for Extension of Time" (Document No. 43) Defendants' "Reply Memorandum in Further Support of Their First Amended Motion for Summary Judgment, Opposition to Motion for Appointment of Counsel, and Opposition to Motion to Relate" (Document No. 44); Plaintiff's "Reply Memorandum in Further Support of His Opposed Motion for Summary Judgment, Motion for Leave to File an Amended Complaint, and Motion to Extend Time to File" (Document No. 45); Defendants' "Response to Plaintiff's Motion for Summary Judgment and Motion for Leave to Amend Complaint" (Document No. 46); and Plaintiff's Reply (Document No. 47). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

## I.  BACKGROUND

At the time he filed his complaint, Plaintiff was an inmate incarcerated in the Travis County Correctional Complex. Plaintiff was subsequently transferred to the Holiday Unit of the Texas Department of Criminal Justice - Correctional Institutions Division. Plaintiff files this action pursuant to 42 U.S.C. § 1983 alleging he was subjected to excessive use of force during his arrest on October 7, 2012. Plaintiff sues Austin Police Department Officers Nathaniel Coriell, Philip Kelly and Steve Dominguez. He seeks compensatory and punitive damages and a declaratory judgment.

According to Plaintiff, he was beaten and tased while he was restrained and in handcuffs. Specifically, he alleges Officer Coriell struck him repeatedly, hitting him over fifteen times in the face, and slammed his face on the pavement several times. He alleges he sustained injuries to his head, face, body, and mind. Plaintiff indicates he was taken to the hospital and CT scans were taken. Plaintiff alleges he has nerve damage and suffered from a fracture and concussion. Plaintiff further alleges Officer Kelly used handcuffs unusually and caused permanent nerve damage in his right hand. Plaintiff also alleges Officer Kelly restrained Plaintiff by sitting or laying on top of him while

Officer Coriell beat him. With regard to Officer Dominguez, Plaintiff alleges he was the senior officer present and he failed in his responsibility to restrain his officers and allowed his officers to use excessive force on him.

In his Rule 7 Reply, Plaintiff elaborates that on October 7, 2012, at 7:30 a.m. he tried to rob a man in a Starbuck's parking lot. Plaintiff asserts the man had no money, so he let him go. He then proceeded into the Starbucks and robbed the cashier. According to Plaintiff, the police were waiting for him when he exited the Starbucks. Plaintiff alleges he dropped the money and ran. He further alleges he dropped his gun into the bed of a pickup truck parked in the adjacent parking lot at Denny's. Plaintiff asserts the police saw him drop the gun. According to Plaintiff, he then sat down on the curb between two parked cars in the Denny's parking lot and waited for the police. Plaintiff asserts Officer Higginbotham tased him from behind, while Officer Kelly and another officer pushed Plaintiff forward onto his stomach and sat on his back. Plaintiff alleges Officer Kelly and the other officer handcuffed his right arm, which was his only free arm. Plaintiff explains his left arm was pinned under his body. While he was pinned down and held by two officers, Plaintiff alleges Officer Coriell pounded his head like a punching bag, hitting him 20-25 times. Plaintiff asserts he was tased again and his left arm was pulled out from under him and handcuffed. Plaintiff complains the handcuffs were tight, and he suffered nerve damage to his right arm and hand. He repeats he was taken to the hospital after his beating. According to Plaintiff, he suffered a concussion and sustained injuries to his left eye including a fracture in his ocular cavity. Plaintiff states he has recurring headaches and dizziness.

Plaintiff contends the officers' qualified immunity ended after they had him face down on the pavement with two officers on his back, his right arm handcuffed, and his left arm pinned

underneath him. Plaintiff asserts he was totally subdued and was no threat to anyone. Plaintiff alleges the beating, the second tasing, and the misuse of handcuffs was gratuitous, malicious and totally unnecessary for any legitimate law enforcement purpose.

Defendants move for summary judgment. First, Defendants argue Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). They assert that by claiming he was calmly sitting on the curb when police attacked him, Plaintiff is undermining his conviction for resisting arrest. They conclude Plaintiff's excessive force claim must be dismissed. Next, they argue Defendant Dominguez was not present at the time force was used, and he cannot be held liable in his supervisory capacity. With respect to Defendants Coriell and Kelly, they argue they are protected by qualified immunity.

Defendants' version of the facts varies from Plaintiff's. According to Defendants, during the pre-dawn hours of October 7, 2012, a shaken Starbucks employee placed a recorded telephone call to 911. In the call, the employee reported he was at the Starbucks at the intersection of I-35 and Oltorf in Austin, Texas, and that a man, later identified as the plaintiff, had pointed a gun at him in the parking lot, asked for money, and then made his way into the store. Able to watch the Plaintiff on a video monitor from a back room, the employee told the 911 operator the plaintiff was in the store, armed with a gun, and was demanding money from another employee at gunpoint. The plaintiff remained in the store for several minutes, along with several terrified patrons and employees. Eventually, just before the police arrived, the plaintiff fled the store on foot.

Defendants assert that in response to the report that Plaintiff had a gun, APD dispatched multiple officers to the call at approximately 7:02 a.m. Officers Coriell and Kelly, who were both on-duty, in uniform, and driving marked patrol cars carrying APD recording equipment, were among

the officers who responded. While en route to the location, Coriell and Kelly learned via radio that Officer Binder, who arrived less than a minute before them, was in a foot pursuit with Plaintiff.

Defendants explain Coriell and Kelly arrived on the scene at approximately 7:08 a.m. When Coriell exited his car, he saw that Officer Binder had Plaintiff at gun point in the drive-through area between Starbucks and an adjacent Jiffy Lube. He then saw Plaintiff run from Officer Binder southbound through the parking lot behind the Jiffy Lube, jump the fence and continue running southbound towards a small office building in the rear of a Denny's restaurant, located in a neighboring lot, and separated from the Starbucks and Jiffy Lube by a chain link fence.

According to Defendants, when Kelly arrived on the scene and exited his car, he saw that Officer Binder was approaching the chain link fence. Believing he could cut off Plaintiff's escape, Kelly returned to his patrol car and drove southbound to the Denny's parking lot.

Coriell allegedly jumped the fence and took over the foot pursuit of Plaintiff. As he chased Plaintiff, Coriell gave loud verbal commands that he was a police officer and to "stop." Plaintiff did not obey Coriell's commands to stop and continued running. The foot chase continued in the dark around the buildings. At one point, Coriell saw Plaintiff throw an object on the roof of a building. Coriell had his gun drawn and ordered Plaintiff to stop, but he continued to flee. Defendants assert that as Coriell made his way through the parking lot of the Denny's, he heard a banging noise from a pickup truck. Several bystanders also pointed to the truck, exclaiming: "He's right there." Believing that Plaintiff was armed, Coriell cautiously approached the truck. When Plaintiff stepped into Coriell's view, Plaintiff stared at Coriell and ignored additional commands to stop and get on the ground. As Plaintiff walked away, Coriell observed Plaintiff reach into the left pocket of his shorts.

Defendants maintain when Plaintiff reached the curb separating the Denny's and the small office building, he sat down on the curb, in between a yellow cab and another car, and stared at Coriell. Plaintiff still had his hand in his left pocket and still continued to ignore Coriell's commands to get on his stomach. Coriell was just a foot or two away from Plaintiff at this point and had his gun pointed at Plaintiff. In the meantime, other officers, including Officer Kelly, Officer Higginbotham and Officer Richard Cross, also arrived in the area near the Denny's. Kelly moved to assist Coriell just after Officer Higginbotham and Officer Cross arrived on the scene.

Concerned for his safety and the safety of his fellow officers and the public, Coriell claims he asked Officer Higginbotham to tase Plaintiff after his repeated failure to obey commands and due to the possibility that Plaintiff still had a concealed weapon. Officer Higginbotham approached Plaintiff from his right side and deployed her Taser. After being tased, Plaintiff rolled backwards onto his back into the grassy area behind the curb. Coriell then placed his foot on Plaintiff's stomach to keep him on the ground. Plaintiff was rolled to his stomach to attempt to get his hands behind his back to handcuff him. Coriell reholstered his gun to assist in rolling Plaintiff onto his stomach. Once he was on his stomach, the officers attempted to handcuff the plaintiff, but Plaintiff began to try to get up on his feet by pushing up into a push-up type position. Defendants assert Plaintiff did not become compliant after being tased by Officer Higginbotham.

According to Defendants, Plaintiff was given loud, clear commands by officers to give up his hands and stop resisting, but he refused. Defendants explain the officers applied force to attempt to get Plaintiff under control and handcuffed, because Plaintiff's hands were out of view of the officers and the officers were in fear that Plaintiff was potentially reaching for his gun. Specifically, Coriell applied empty hand punches to both sides of Plaintiff's face in an attempt to get him to

comply. Defendants maintain Plaintiff continued to try to get back on his feet and would not give the officers his left hand. According to Defendants, Plaintiff would not show the officers his left hand and tensed his arm to keep the other officers from pulling it out from under his body. Coriell asserts he continued applying hard, empty hand punches to both sides of Plaintiff's face, because he remained concerned that Plaintiff was concealing a gun and that he was reaching for his gun. Coriell also lifted Plaintiff's head one or two inches off the ground and struck the left side of Plaintiff's head into the concrete. Coriell asserts he did this two or three times and Plaintiff continued to resist. In total, Coriell admits to applying ten to fifteen punches to Plaintiff's face and hitting Plaintiff's head on the concrete a maximum of three times.

Defendants assert that as Coriell applied hard empty hand punches to Plaintiff's face, Officer Binder applied some drive stuns with a Taser. According to Defendants, the drive stun appeared to have no effect and Plaintiff continued to resist. Because Plaintiff appeared to be overpowering the officers and possibly reaching for a gun, Defendant Kelly asserts he struck Plaintiff once with a closed fist on the lower right side of his body. Eventually, the officers were able to handcuff Plaintiff and place hobble restraints on his ankles. After Plaintiff was restrained and searched, no gun was found on Plaintiff. A gun was later found in the bed of the pickup truck that Coriell first saw when he was pursuing Plaintiff, and after Coriell had lost sight of Plaintiff and was then told by bystanders where Plaintiff was hiding in the Denny's parking lot. Coriell denies he ever saw Plaintiff put anything into the bed of the pickup truck or dig around in the bed of the pickup truck.

EMS arrived on the scene and, along with Coriell, transported Plaintiff to Brackenridge, where he was treated. After Plaintiff was released from the hospital, Officers Cross and Coriell transported him to the main police station to be interviewed by the robbery detective.

## II. ANALYSIS

    A.    <u>Summary-Judgment Standard</u>

Defendants move for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 576 (1986)).

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Allen v. Rapides Parish Sch. Bd.,* 204 F.3d 619, 621 (5th Cir. 2000) (internal quotations and citations omitted). Conclusory allegations are not competent summary-judgment proof, and thus are insufficient to defeat a motion for summary judgment. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are also not competent summary-judgment proof. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The nonmovant must go beyond the pleadings and identify specific proof in the record and articulate the precise manner in which that proof supports his claim. *See Wheeler v. B.L. Dev. Corp.*, 415 F.3d 399, 401–02 (5th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 324)); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458

(5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the summary-judgment motion. *Ragas*, 136 F.3d at 458. Doubts will be resolved in favor of the nonmovant, and all justifiable inferences to be drawn from the underlying facts are viewed in the light most favorable to that party. *See Minter v. Great Am. Ins. Co.*, 423 F.3d 460, 465 (5th Cir. 2005); *Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir. 1999).

    B.    <u>*Heck v. Humphrey*</u>

Defendants first argue that Plaintiff's claims are barred by the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* holds that a person may not maintain a civil rights action based on the legality of a prior criminal proceeding unless a state court or federal habeas court has determined that the terms of confinement are in fact invalid. *Heck*, 512 U.S. at 486-87. The critical inquiry is whether a judgment in favor of the plaintiff in the civil action would "necessarily imply the invalidity of his conviction or sentence." *Id.* Plaintiff was convicted in two cases of aggravated robbery. Plaintiff was also charged in a separate case for resisting arrest. However, the resisting arrest charge was dismissed by the state court after it was considered as an unadjudicated offense in assessing punishment in the aggravated robbery cases. *See* Def. MSJ Ex. B. Although *Heck* may have barred Plaintiff's excessive force claim had he been convicted of resisting arrest or assaulting a peace officer, *see Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999), no such conviction exists here. Therefore, Plaintiff's claims are not barred by the *Heck* doctrine.

    C.    <u>Corporal Steve Dominguez</u>

Defendant Dominguez moves for summary judgment arguing he was not present at the time of the events in question. Plaintiff appears to sue Dominguez in his supervisory capacity. However,

supervisory officials cannot be held vicariously liable under § 1983 solely on the basis of their employer-employee relationship. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 693 (1978); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). If a supervisor is not personally involved in the alleged constitutional deprivation, he or she may only be held liable if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987). The videotape evidence clearly shows Corporal Dominguez arrived at the scene after Plaintiff was in custody and in handcuffs. Accordingly, summary judgment is appropriate with regard to Defendant Dominguez.

      D.    <u>Qualified Immunity</u>

Defendants Coriell and Kelly assert they are entitled to qualified immunity. In *Harris v. Serpas*, 745 F.3d 767 (5th Cir. 2014), the Fifth Circuit recently explained:

> "Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Once the defendant raises the qualified immunity defense, "the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (quoting *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)). "Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment." *Mace*, 333 F.3d at 624 (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L. Ed.2d 443 (1989)).
>
> "This court applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity." *Freeman*, 483 F.3d at 410. First, this Court must determine "whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." *Id*. "If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* at 410–11. "To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (internal quotations and citations omitted).

> The reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S. Ct. 1865.

Defendants argue Plaintiff's injuries were not severe. They further argue the evidence in the case belies Plaintiff's conclusory allegations of sustaining any serious or long-term injuries.

A showing of severe injury is not required in the context of an excessive force claim. Rather, the Fifth Circuit requires a plaintiff to have "suffered at least some form of injury." *Williams v. Bramer*, 180 F.3d 699, 700 (5th Cir. 1999). However, the injury must be "more than a *de minimis* injury" and must be evaluated in the context in which the force was deployed. *Id.* As pointed out by Plaintiff, his booking photo shows evidence of his injury. In addition, Defendants admit Plaintiff was taken to a hospital for treatment where Plaintiff states CT scans were necessary due to his head being slammed into concrete. The summary-judgment evidence sufficiently shows Plaintiff suffered more than a *de minimis* injury.

The Court next turns to the second and third elements–whether the injuries resulted from the use of force that was clearly excessive and whether that force was objectively unreasonable. As discussed earlier, Plaintiff's version of events is that after initially evading arrest for an aggravated robbery, he sat on a curb and waited for the police in the Denny's parking lot. He was subsequently tased by Officer Higginbotham and claims he offered no resistance thereafter. Despite offering no resistance, Kelly wrenched Plaintiff's arm behind his back, flipped him over, slammed him onto the pavement, and threw his 250 pound body onto Plaintiff's back. Then Officer Coriell punched him multiple times in the head and face and slammed his head into the concrete three times. Defendants on the other hand, assert Plaintiff actively resisted after he was tased by Officer Higginbotham. They

claim Plaintiff tried to get up on his feet by pushing up into a push-up type position, would not give the officers his left hand, and tensed his arm to keep the other officers from pulling it out from under his body. At the time of the events in question, the officers still believed Plaintiff was armed with a loaded gun.

After consideration of the summary-judgment evidence, the Court finds that genuine disputes as to material facts exist with regard to whether Defendants Coriell and Kelly violated Plaintiff's constitutional rights by subjecting him to excessive force during his arrest and whether the force was objectively reasonable. While Defendants assert Plaintiff continued to resist and struggle after being tased by Officer Higginbotham, Plaintiff avers he offered no resistance. Although Defendants provide the Court with several videotapes of the incident, the use of force cannot be seen on tape and the audio is not dispositive of the issues. Considering the summary-judgment proof in the light most favorable to Plaintiff, a reasonable trier of fact could believe that Coriell's and Kelly's actions taken after Plaintiff was tased the first time were not objectively reasonable. Depending on factual determinations, which can be made only after a consideration of the witnesses' demeanor and credibility after both direct and cross examination, a reasonable fact finder could then find that the force used by Coriell and Kelly was excessive. Based on the summary-judgment record, the Court cannot say that Coriell's and Kelly's actions were objectively reasonable as a matter of law. Therefore, the Court concludes that Defendants' motion for summary judgment should be denied with respect to Defendants Coriell and Kelly.

### III. RECOMMENDATION

The undersigned recommends that the District Court **DISMISS** Defendants' original Motion for Summary Judgment [#28], which was superseded by their First Amended Motion for Summary

12

claim Plaintiff tried to get up on his feet by pushing up into a push-up type position, would not give the officers his left hand, and tensed his arm to keep the other officers from pulling it out from under his body. At the time of the events in question, the officers still believed Plaintiff was armed with a loaded gun.

After consideration of the summary-judgment evidence, the Court finds that genuine disputes as to material facts exist with regard to whether Defendants Coriell and Kelly violated Plaintiff's constitutional rights by subjecting him to excessive force during his arrest and whether the force was objectively reasonable. While Defendants assert Plaintiff continued to resist and struggle after being tased by Officer Higginbotham, Plaintiff avers he offered no resistance. Although Defendants provide the Court with several videotapes of the incident, the use of force cannot be seen on tape and the audio is not dispositive of the issues. Considering the summary-judgment proof in the light most favorable to Plaintiff, a reasonable trier of fact could believe that Coriell's and Kelly's actions taken after Plaintiff was tased the first time were not objectively reasonable. Depending on factual determinations, which can be made only after a consideration of the witnesses' demeanor and credibility after both direct and cross examination, a reasonable fact finder could then find that the force used by Coriell and Kelly was excessive. Based on the summary-judgment record, the Court cannot say that Coriell's and Kelly's actions were objectively reasonable as a matter of law. Therefore, the Court concludes that Defendants' motion for summary judgment should be denied with respect to Defendants Coriell and Kelly.

### III. RECOMMENDATION

The undersigned recommends that the District Court **DISMISS** Defendants' original Motion for Summary Judgment [#28], which was superseded by their First Amended Motion for Summary

Judgment [#36], **GRANT IN PART AND DENY IN PART** Defendants' First Amended Motion for Summary Judgment [#36],[3] **DISMISS** Plaintiff's Motion for Summary Judgment [#43], **DENY** Plaintiff's Motion to Relate [#43], and **GRANT** Plaintiff's Motion for Appointment of Counsel. A trial should be set with regard to Plaintiff's claims against Defendants Coriell and Kelly after counsel has been appointed to represent Plaintiff.

## IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1428-29 (5th Cir. *en banc*, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

---

[3] Construing Plaintiff's claims liberally, as the Court must, the Court presumes Plaintiff is suing the defendants in their individual and official capacity. The Court notes Defendants did not move for summary judgment on any official capacity claims.

ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 17th day of July, 2014.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE